IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLEN JOHNSON, SR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KEVIN FRAIN, D. HOLCOMB, )<br>JOHN DOE, TARRY WILLIAMS )<br>ASST. WARDEN LAMB, ASST. )<br>WARDEN NICHOLSON, SALEH )<br>OBAISI, and WEXFORD HEALTH )<br>SOURCES, INC., )<br>)<br>Defendants. ) | Case No. 17 C 2000<br><br>Hon. Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Allen Johnson, Sr., an Illinois inmate incarcerated at Stateville Correctional Center ("Stateville") brings this civil rights action under 42 U.S.C. § 1983 and Illinois state law alleging that six Illinois Department of Corrections employees, including the warden, assistant wardens, and a correctional officer; Wexford Health Sources, Inc. ("Wexford"); and Stateville's former medical director all were deliberately indifferent to a hazardous condition of confinement and then deliberately indifferent to Johnson's serious medical needs. *See* (Dkt. 34). Currently before the Court is Wexford's motion to dismiss. (Dkt. 38). For the reasons set forth below, the motion to dismiss is granted.

**BACKGROUND**[1]

This case involves a broken weight machine that sits alongside the basketball court in Stateville's inmate gymnasium. The machine's steel seat has "sharp and exposed" corners and "sharp exposed metal edges." (Dkt. 34) at ¶¶ 2, 20–22. On May 19, 2016 at some time around

---

[1] The facts are drawn from Johnson's amended complaint. For the purposes of Wexford's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. *See Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013).

noon, Plaintiff Allen Johnson, Sr. was playing basketball when he fell towards the weight machine and seriously cut his right knee and thigh on the steel seat. *Id*. at ¶ 24. The corrections officer at the scene made a non-emergency call to the health care unit (which is run by Defendant Wexford), and a medical technician and a nurse eventually arrived around 1:20 p.m. with a wheelchair. But the nature of Johnson's injuries meant that he needed to be transported by a stretcher, which was eventually brought and used to take him to the health care unit. *Id*. at ¶¶ 25–28. Around 2 p.m., Johnson was transported to St. Joseph Hospital in Joliet, Illinois, where he underwent surgery for his wound. *Id*. at ¶ 32.

Following surgery, Johnson experienced severe pain under his kneecap. In July 2016, Johnson was sent back to St. Joseph Hospital for an evaluation with the surgeon; the surgeon recommended another follow-up visit if Johnson's sharp leg pain persisted. *Id*. at ¶ 34. Johnson received physical therapy at Stateville, and he complained to his therapist in August 2016 that he still had knee pain. The physical therapist told Johnson that he was suffering from meniscus damage and recommended that Johnson see an orthopedic specialist to assess the damage. In addition to this recommendation, Johnson was referred a number of times to see Defendant Dr. Saleh Obaisi, who was the medical director of the health care unit at the time. Dr. Obaisi eventually saw Johnson in October 2016, but he refused to send Johnson back to the surgeon at St. Joseph Hospital for further care. *Id*. at ¶¶ 35–37. Sometime around April 2017, Wexford approved an MRI for Johnson's knee to determine the correct treatment for his pain. *Id*. at ¶ 37. At present, Johnson does not have full range of motion of his knee, the knee buckles or is unstable when he is standing or going up and down stairs, and he is still in pain. *Id*. at ¶¶ 73–76.

The amended complaint contains a few other allegations of note concerning Wexford. First, Johnson alleges that Wexford "has a practice of understaffing Stateville's medical

healthcare unit," which prevented him from receiving "required" medical treatment. *Id*. at ¶ 69. Along these same lines, Johnson alleges that Wexford "lacks [both] an effective procedure" and competent medical personnel to evaluate and treat injuries like those to his thigh and knee. *Id*. at ¶ 70. Johnson further alleges that Wexford denies "required treatment" in order to cut costs. *Id*. Finally, Johnson alleges that Wexford failed to authorize a physical evaluation and corrective surgical repair—despite the recommendations of the physical therapist and surgeon—and ignored his condition as it continually worsened, and that these actions demonstrate a "continued, intentional policy and practice of recklessly and callously disregarding clear facts evidencing the severity of [Johnson's] injuries over the course of many months, while such injuries became worse, causing long-term damage to [Johnson's] leg." *Id*. at ¶¶ 72–73, 87.

Johnson's three-count amended complaint (Dkt. 34) asserts Eighth and Fourteenth Amendment claims for deliberate indifference against all Defendants except for Wexford (Count I); a *Monell*[2] claim against Wexford for "maintain[ing] an unconstitutional policy and adopt[ing] a custom of deliberate indifference to the known or obvious consequences of its practices" and "support[ing] a policy that sanctions the maintenance of [unconstitutional] prison conditions" (Count II); and state law "negligence or willful and wanton conduct" against all Defendants (Count III). As relief, Johnson seeks compensatory and punitive damages. Wexford has moved to dismiss the specific claims asserted against it in Count II and III. (Dkt. 38).

## LEGAL STANDARD

Wexford seeks dismissal of Johnson's claims against them under Federal Rule of Civil Procedure 12(b)(6), which challenges the claims' legal sufficiency. For a claim to survive a motion to dismiss brought pursuant to Rule 12(b)(6), it must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

3

A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendants are liable for the harm. *Id*. In making the plausibility determination, the Court relies on its "judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). The complaint should be dismissed only if the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *Christensen v. Cty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007) (citations omitted). That being said, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). For purposes of this motion, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in Johnson's favor. *See Williamson*, 714 F.3d at 435.

## DISCUSSION

### A. *Monell* Claim (Count II)

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant in question must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103–04; *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011). A private corporation, like Wexford, can be held liable for deliberate indifference to an inmate's serious medical needs under *Monell*, "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a practice or custom that, although not officially authorized, is

4

widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 690); *see Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) ("The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents."); *see also Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (*Monell* applies to private corporation that provides medical care services to prison inmates; plaintiff must thus show entity's policy, practice, or custom caused constitutional violation); *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) (same). To demonstrate that Wexford is liable for a harmful custom or practice, Johnson must allege that it was aware of the risk created by the custom or practice and failed to take appropriate steps to protect him. *Thomas*, 604 F.3d at 303.

Wexford does not address at this time whether Johnson's thigh/knee injury is a serious medical condition, and the Court therefore will assume, at least for purposes of Wexford's motion, that Johnson's allegations satisfy the first prong of the deliberate-indifference test. Turning to the second prong, Wexford argues that Johnson's allegations are insufficient to support his *Monell* claim.

Although Johnson is correct that *Monell* claims may proceed with conclusory allegations of a policy or practice (*see* (Dkt. 45) at 4), "some specific facts" must be pleaded to put the defendant on notice of the alleged wrongdoing. *Armour v. Country Club Hills*, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011), and *Riley v. County of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)). Here, Johnson complains of Wexford's "unconstitutional policy" and widespread practices and customs that caused his alleged constitutional deprivation. Notably, the amended complaint does not allege

5

that any of Wexford's *official* or written policies violated Johnson's constitutional rights. Instead, Johnson's *Monell* theory assumes that his own experience is evidence that certain policies exist, because he would have received better care if Wexford had more staff, better qualified staff, or a different fiscal policy or if he had been sent to outside doctors on more occasions. Where the alleged constitutional deprivation resulted from an implicit policy, a plaintiff must present evidence of a widespread practice, not simply an isolated event. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008). Although no "bright-line rules" defining a widespread practice or custom exist, generally one instance is, or in some cases even three instances are, insufficient to "demonstrate that there is a policy at issue." *Thomas*, 604 F.3d at 303. That is, although "[t]here is no magic number of injuries that must occur before its failure to act can be considered deliberately indifferent," *Glisson*, 849 F.3d at 382, "*Monell* claims based on allegations of an unconstitutional . . . practice or custom—as distinct from an official policy—normally require evidence that the identified practice or custom caused multiple injuries." *Chatham*, 839 F.3d at 685.

To be sure, a plaintiff raising a *Monell* claim may rely solely on his own experience, rather than being required to plead examples of other individuals' experiences. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)) (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff.") (collecting cases). However, the plaintiff

6

must provide enough facts to create the inference that a true policy or practice is at issue, not just a random event. *Grieveson*, 538 F.3d at 774. In determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, the Court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom. *See, e.g.*, *Carmona v. City of Chicago*, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018). For example, in *White v. City of Chicago*, the Seventh Circuit found allegations that officers had obtained a warrant for the plaintiff's arrest based on nothing but rank suspicion, combined with the Chicago Police Department's "standard printed form" for warrant applications that officers generally used for all warrants—which was attached to the complaint, and, on its face, did not require officer-applicants to provide "factual support" when making requests—sufficed to state a *Monell* claim. 829 F.3d at 844.

Looking at the alleged instances of misconduct, surrounding circumstances, and additional facts, Johnson has failed to provide sufficient information from which the Court could infer a plausible *Monell* claim against Wexford. In all, Johnson alleges that Wexford had a policy, practice, or custom of denying inmates proper medical treatment because (1) the Stateville heath care unit was understaffed, (2) Wexford failed to promulgate adequate evaluation and treatment procedures for thigh and knee injuries, (3) Wexford failed to hire medical professionals who specialize in thigh and knee injuries, and (4) Wexford failed to authorize his treatment from outside doctors in order to cut costs. Johnson also alleges that Wexford has a policy that condones unconstitutional prison conditions. These allegations fail for numerous reasons.

First, the amended complaint fails to sufficiently allege the existence of a policy or widespread practice or custom. For example, Johnson's allegation that Wexford has a policy of

7

denying outside medical treatment—both in general and for financial reasons—is only supported by the allegation that Johnson was not sent out for treatment after July 2016. *See Myrick v. Anglin*, 496 F. App'x 670, 675 (7th Cir. 2012) (affirming dismissal of *Monell* claims based on alleged policy "to cut medical costs" because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Sharif v. Ghosh*, 2013 WL 228239, at *6 (N.D. Ill. Jan. 18, 2013) (dismissing official-capacity claim because "contention of a policy or custom of inadequately treating inmates or refusing to order tests for them based upon financial reasons is at best speculative"). But the complaint reflects that Johnson *was* taken to an outside hospital on two prior occasions—immediately after his accident in May 2016 and in July 2016 for a follow-up appointment—and the complaint is not clear as to whether the 2017 MRI was performed at an outside hospital. (Dkt. 34) at ¶¶ 32, 34, 37. Thus, the facts alleged do not support the reasonable inference that Wexford has a widespread policy of always denying outside medical treatment. Further, there is nothing in the complaint to raise the inference that any denial of outside treatment for Johnson was in any way related to financial concerns.

Johnson's allegations regarding staffing levels, staff competency, and Wexford's failure to implement policies regarding the evaluation and treatment of injuries like his own similarly are conclusory and supported only by speculation based entirely off of Johnson's own individual experience. Without more, these cannot support the inference that Wexford maintains such policies and practices. *See, e.g.*, *Springs v. Schwarz*, 2017 WL 4130504, at *4 (N.D. Ill. Sept. 19, 2017) (dismissing *Monell* claim that was "speculative, unsupported by any factual allegations, and contain[ed] no facts regarding other inmates' experiences"); *Young v. Obaisi*, 2015 WL 8013437, at *3 (N.D. Ill. Dec. 7, 2015) (dismissing *Monell* claim based on plaintiff's "highly speculative and extremely vague allegation against Wexford" regarding care only

plaintiff received); *Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016) (dismissing plaintiff's "factually unsupported, boilerplate allegation" regarding a general policy of ignoring inmates' requests for medical attention). And Johnson's allegation that Wexford has a policy that condones unconstitutional prison conditions possibly is the worst offender of the bunch, in that Johnson has not provided any allegations to infer that Wexford even knew or should have known about the broken machine, much less that Wexford somehow "sanctioned" the machine or had a policy that "sanctioned" that and other dangerous conditions.

In addition, the amended complaint fails to allege how some of the alleged polices—particularly those concerning staffing at Stateville and cost-cutting—are connected to Johnson's injury, particularly in light of his other allegations that he was taken to St. Joseph Hospital some 40 minutes after being first seen by health care unit personnel and then seen by the same outside doctor in a follow-up appointment about a month and a half later. (Dkt. 34) at ¶¶ 27, 32. Accordingly, in the absence of any other facts, Johnson's allegations about staffing do not lead to the inference that these policies or practices were connected to—let alone *caused*—his injury. *See Harris v. Wexford Health Sources, Inc.*, 2017 WL 4467480, at *3–4 (N.D. Ill. Oct. 6, 2017) (dismissing *Monell* claim against Wexford where complaint did not adequately provide facts to support how Wexford's policies or practices or "alleged desire to save money" caused plaintiff's injuries where he was taken to the hospital before and on the night of the emergency and the complaint lacked further allegations that certain decisions were made on the basis of any policy).

In response, Johnson states that the Court should "consider the *Lippert* Report" as additional evidence that some of Wexford's policies at Stateville violate the constitutional rights of inmates. *See* (Dkt. 45) at 5. But Johnson's vague reference to a single document in a case with more than 660 docket entries, *see Lippert v. Godinez*, No. 10 C 4603 (N.D. Ill.), is not

sufficient to carry his burden to plead a plausible claim for relief. Even assuming that Johnson is referencing the Final Report of the Court Appointed Expert (dated December 2014) in that case, *see Lippert v. Godinez*, No. 10 C 4603 (Dkt. 339) (N.D. Ill.) (Court Appointed Expert's Redacted Report), that document is more than 400 pages and without a specific page or policy reference by Johnson, this document alone cannot save his claim. The Court will not sift through that entire document for information that may be helpful for Johnson.

As a final point, Wexford also argues that Johnson cannot assert a claim against it under vicarious liability for Dr. Obaisi's actions because such liability is not available under § 1983. *See* (Dkt. 38) at 6–7; *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) ("Respondeat superior liability does not apply to private corporations under § 1983."). Through his response, Johnson clarifies that Count II does *not* set forth a claim for respondeat superior against Wexford, and the Court therefore will not consider this issue. *See* (Dkt. 45) at 4–5. Count II is dismissed.

**B.    Negligent or Willful and Wanton Conduct under Illinois Law (Count III)**

In Count III, Johnson alleges that Wexford was negligent because it breached its "duty of care" by (1) failing to take action regarding the broken weight machine despite being warned of its danger, (2) failing to provide Johnson with adequate medical care at the time of his injury, and (3) failing to provide him with adequate medical care in the subsequent months. (Dkt. 34) at ¶ 91. Johnson alleges that—alternatively—Wexford's actions were willful and wanton because they "demonstrated utter indifference to [Johnson's] safety." *Id*. at ¶ 92.

Insofar as this Count alleges negligence, Wexford argues that the essence of the claim is medical malpractice, which Wexford argues is deficient under Illinois law because Johnson failed to file the requisite affidavit under 735 ILCS 5/2-622(a). (Dkt. 38) at 9. Johnson,

however, argues that Count III "clearly" does not bring a medical malpractice claim. *See* (Dkt. 45) at 6. Although a complaint may not state a medical malpractice claim on its face, it may nonetheless come within the ambit of section 2-622 if it sounds in malpractice. *Liebich v. Hardy*, 2014 WL 1395957, at *1 (N.D. Ill. Apr. 10, 2014); *see Jackson v. Chicago Classic Janitorial & Cleaning Serv., Inc.*, 355 Ill. App. 3d 906, 909 (1st Dist. 2005) (analyzing the standard of care involved, the type of activity involved, and the necessary evidence). Here, Count III's negligence claim sounds in medical malpractice because the treatment decisions at issue regard the provision of "adequate medical care," and the evidence necessary to prove Wexford's standard of care (which concerns the quality of medical care Johnson received), likely will be beyond the knowledge of a lay juror and will require expert testimony. *See Liebich*, 2014 WL 1395957, at *1. Accordingly, as it is alleged against Wexford, Count III is a medical malpractice claim subject to the requirements of 735 ILCS 5/2-622. *Cf. Awalt v. Marketti*, 2012 WL 1161500, at *3–4 (N.D. Ill. Apr. 9, 2012) (holding that section 2-622 did not apply to negligence claims because "negligence by a health care provider that is unrelated to the unreasonable application of his medical expertise is not a claim for medical malpractice").

The Illinois Healing Art Malpractice Act provides that in any action for damages "by reason of medical, hospital, or other healing art malpractice," a plaintiff must file an affidavit along with the complaint, declaring one of the following: (1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); (2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be

filed within 90 days after the filing of the complaint); or (3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). 735 ILCS 5/2-622(a). Failure to satisfy this requirement is grounds for dismissal, even in federal court. *See* 735 ILCS 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000); *see*, *e.g.*, *Ortiz v. United States*, 2014 WL 642426, at *2–3 (N.D. Ill. Feb. 19, 2014). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice." *Id*. (citation and quotations omitted). Here, Johnson has not filed the necessary affidavit or certificate of merit, and therefore the medical negligence claim against Wexford in Count III is dismissed without prejudice.

To the extent that Count III also states a claim for willful and wanton conduct against Wexford, it is dismissed. The only allegation of willful and wanton conduct in Count III relates to "Defendants'" knowledge of the safety risk that the broken weight machine posed to Johnson and "Defendants'" indifference to that risk by disregarding it. (Dkt. 34) at ¶ 92. But as stated earlier, the amended complaint does not contain any factual allegations that could support an inference that Wexford knew about the dangerous machine let alone disregarded the risk. In sum, the conclusory allegations that Wexford is liable for willful and wanton conduct do not state a plausible claim.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss (Dkt. 38) is granted. Johnson is given until May 17, 2018 to file a second amended complaint consistent with this opinion to the extent that he can do so.

_____
Hon, Virginia M. Kendall
United States District Judge

Date: May 4, 2018